UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ALEXANDER THORNTON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| vs. | ) Case No. 4:11 CV 1872SNLJ (ACL) |
| | ) |
| MICHAEL BOWERSOX, | ) |
| | ) |
| Respondent. | ) |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the Court on the Petition of Alexander Thornton for a Writ of Habeas Corpus under 28 U.S.C. § 2254. This cause was referred to the undersigned United States Magistrate Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 (b).

### Procedural History

Petitioner, Alexander Thornton, is presently incarcerated at the South Central Correctional Center in Licking, Missouri, pursuant to the Sentence and Judgment of the Circuit Court of St. Louis County, Missouri. (Respondent's Exhibit A at 37-41.) On January 28, 2008, the date Thornton's case was set for trial, he entered a blind plea to one count of first-degree assault, one count of attempted first-degree robbery, one count of stealing a motor vehicle, and two counts of armed criminal action. Id. at 14-18. On March 13, 2008, Thornton was sentenced to an aggregate term of twenty-five years imprisonment. Id. at 19-36, 37-41. On April 29, 2008, Thornton filed a pro se Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Mo.S.Ct.Rule 24.035. Id. at 47-52. On July 1, 2009, after appointment of counsel, Thornton filed an Amended Motion to Vacate, Set Aside or Correct Judgment and Sentence and Request for

Evidentiary Hearing. Id. at 63-71. Thornton argued that he received ineffective assistance of counsel in that plea counsel promised Thornton he would receive a lenient sentence in return for cooperating with the State. Id. at 63-71. An evidentiary hearing was held on Thornton's post-conviction motion, at which Thornton, plea counsel, Thornton's mother, and the prosecuting attorney testified. (Respt's Ex. A.) On December 11, 2009, the motion court denied Thornton's motion. (Respt's Ex. B at 74-77.)

Thornton raised a single issue on appeal from the denial of post-conviction relief. (Respt's Ex. C.) Specifically, Thornton argued that plea counsel was ineffective for not ensuring thatThornton understood that his cooperation with the State would not guarantee a plea deal of ten to fifteen years, and that the court would determine his ultimate sentence regardless of Thornton's cooperation with the State. Id. at 9. On February 15, 2011, the Missouri Court of Appeals for the Eastern District affirmed the denial of post-conviction relief. (Respt's Ex. E.)

On October 26, 2011, Thornton, pro se, filed the instant Petition for a Writ of Habeas Corpus. (Doc. 1.) Thornton raises four grounds for relief. In his first ground for relief, Thornton argues that he was denied effective assistance of counsel, because plea counsel did not explain that Thornton's cooperation with the State would not guarantee a plea deal of ten to fifteen years, and that the court would determine his sentence regardless of Thornton's cooperation with the State. In his second ground for relief, Thornton argues that the Prosecutor engaged in misconduct when she led Thornton to believe he would receive some type of leniency if he provided information on his co-defendant. In his third ground for relief, Thornton contends that he was denied effective assistance of counsel when trial counsel failed to argue that a police officer committed perjury during a suppression hearing. In his fourth ground for relief, Thornton argues that he was denied effective assistance of counsel when counsel failed to object

to the sentencing court sentencing Thornton on both first degree assault and armed criminal action; and attempted first degree robbery and armed criminal action.

On July 30, 2012, Respondent filed a Response to Order to Show Cause, in which he argues that Thornton's first ground for relief fails on its merits, and the remainder of his claims are procedurally defaulted and fail on their merits. (Doc. 7.) Thornton has also filed a Traverse, in which he provides further argument in support of his claims. (Doc. 14.)

**Facts**

Thornton was charged with the shooting and attempted robbery of James Horskins occurring on November 20, 2006, in St. Louis County. (Respt's Ex. B at 10-12.)

On the date Thornton's case was set for trial, defense counsel announced that Thornton wished to withdraw his pleas of not guilty and enter pleas of guilty on all counts. (Respt's Ex. B at 14.) Defense counsel indicated that Thornton's "pleas are made not pursuant at this point. No agreement with the state of Missouri regarding disposition." Id.

The prosecutor stated the following factual basis for the plea:

> This matter was set for trial today and the State was prepared to go to trial with the evidence that the defendant, Alexander Thornton, had contrived a plan with his girlfriend, Jamie Powell, to rob Mr. Horskins of drugs and money. Mr. Thornton had procured his friend, Cornell Merritt, to assist in that, and Cornell Merritt got a weapon and ammunition and gave that to Alexander Thornton. Prior to the robbery they had devised a plan that Jamie [Powell] would get Mr. Horskins to drive to a certain location and advise Mr. Thornton and Mr. Merritt where she was. Mr. Thornton and Mr. Merritt then would rob the victim.
> Mr. Horskins—Mr. Thornton went to the Wal-Mart location where they agreed to meet with Mr. Merritt, approached the victim's vehicle. He banged on the window with the gun trying to break the window. When the window wouldn't break, he shot the window. That bullet landed in Mr. Horskins, the victim. Once the window was broken, the defendant then shot four more times inside the vehicle. All bullets landed in Mr. Horskins, who was shot a total of five times.

> Each bullet is still in Mr. Horskins' body. One lodged near his spine. One chipped his liver, and the others are located in his hands. The victim has scars and is still suffering injury as a result of these gunshot wounds. The defendant was later apprehended in the company of Jamie Powell and the defendant was taken to Maplewood Police Department. He waived his rights as read per Miranda to him and they were explained to him and he admitted to his participation in the crime and included the participation of Miss Powell and Cornell Merritt.

Id. at 16. The court then inquired of Thornton, "is the evidence stated by the prosecutor regarding all five counts substantially correct?" Id. Thornton replied, "Yes, Your Honor."

Id.

The State proved Thornton to be a persistent offender. Id. When asked by the court if the State wished to "place a recommendation on the record," the prosecutor responded:

> The State will review making a recommendation. We had prepared for trial, and we had withdrawn our original recommendation of 25 years in the Missouri Department of Corrections. We will make a recommendation to the Court, upon reviewing the Presentence Investigation, and the defendant, Alexander Thornton, has expressed an interest in cooperating with the State in the prosecution of Miss Jamie Powell. The State has not granted any leniency towards him. If he did cooperate, if he wanted to make a blind plea, and the Court would want to take that into consideration, he has that right to do that.

Id. at 16.

The court then questioned Thornton as follows:

THE COURT: Mr. Thornton, you understand there is no plea agreement between Prosecuting Attorney's office and you and your attorney regarding what sentence the Court may impose, is that correct?

[Thornton]: Yes, ma'am.

THE COURT: [The prosecutor] indicated prior to today she has conveyed a recommendation of 25 years in the custody of the Department of Corrections for these five counts. Did your attorney convey that recommendation to you?

[Thornton]: Yes, ma'am.

THE COURT: But you are leaving it to the Court to determine the appropriate sentence in this case, is that correct?

[Thornton]: Yes, Your Honor.

THE COURT: Has anyone made any promises to you that you would receive—you can't receive probation on Armed Criminal Action, but make you any promises that you would receive probation on any of the other counts?

[Thornton]: No, ma'am.

THE COURT: Did they make you any promises concerning any particular sentence they felt the Court would impose in this case?

[Thornton]: No, ma'am.

THE COURT: You understand that I've made no promises to anyone concerning what sentence I may impose?

[Thornton]: I understand.

THE COURT: Do you understand we're going to request the Board of Probation and Parole to prepare a Sentencing Assessment Report, and that will aid me in determining the appropriate sentence in this case?

[Thornton]: Yes, ma'am.

THE COURT: Do you understand that although the report may contain recommendations, they are only recommendations, and are not binding on the Court and I don't have to follow them?

[Thornton]: Yes, ma'am.

THE COURT: Do you understand if you are unhappy or dissatisfied in any way with the sentence the Court imposes when you come back for sentencing, you're not going to be allowed to withdraw your guilty plea for that reason?

[Thornton]: I understand.

THE COURT: Knowing all of that, is it still your desire to enter a plea of guilty?

[Thornton]: Yes, ma'am.

THE COURT: Has anyone made any promises or threats to you or your family to convince you to enter this plea of guilty?

>[Thornton]: No, ma'am.

Id. at 16-17. The court also questioned Thornton about the services of plea counsel. Id. at 17. Thornton testified that he had had enough time to discuss his case with counsel; and that counsel had done everything Thornton asked him to do, answered all of Thornton's questions, investigated the case to Thornton's complete satisfaction, and adequately represented Thornton. Id. The court accepted Thornton's plea. Id. at 18.

At the sentencing hearing, defense counsel indicated that he had reviewed the Sentencing Assessment Report ("SAR") and that Thornton denied the allegations of "alleged arrest and/or rape, kidnapping that's contained in the report." Id. at 21. Plea counsel made the following statement, in relevant part, before sentencing was pronounced:

> Your Honor, and in furtherance of his sorrow and his participation in that crime he agreed, he accepted responsibility for his actions, admitted his complicity in this particular crime, and then he agreed to help the State against Jamie Powell who they did not—they did not have a significant amount of evidence against.
> He gave them an interview, which in my opinion was truthful, and would have testified against Ms. Powell to cooperate with the State, and also to demonstrate his remorsefulness in this particular crime.
> Now for all his acceptance of responsibility and the fact that this is an isolated incident and all his cooperation with the State of Missouri and his willingness to go forward with Ms. Powell and this plea of guilty, the Court is considering sentencing him to twenty-five years. That is the sentence in the sentencing guidelines that is the aggravating sentence in this case.
> I understand the events that occurred here, but I believe that Mr. Thornton is entitled to a mitigating sentence which would be to fifteen years. I think he's at least entitled to a presumptive sentence in this case which is twenty years.
> If this Court sentences Mr. Thornton to twenty-five years, the aggravated sentence, then what does the acceptance of responsibility, the willingness to cooperate with the State, and his willingness to testify against Ms. Powell, what message does that send to me as an attorney, to Mr. Thornton, and to all of the defendants that are similarly situated?

> That if you are truly remorseful, you really, really truly want to help the State out, you truly want to cooperate, go ahead and plead guilty and get the sentence under the SAR. Twenty-five.
>
> I know what message it sends me as an attorney. I'm asking Your Honor for at least twenty years which is the presumptive in this case.

Id. at 29. The court sentenced Thornton to twenty-five years imprisonment. Id. at 30.

## Discussion

**A.      Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), federal courts review state court decisions under a deferential standard. Owens v. Dormire, 198 F.3d 679, 681 (8th Cir. 1999). "[A] district court shall entertain an application for a writ of habeas corpus . . . only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §2254(a). Further, a federal court may not grant habeas relief unless the claim adjudicated on the merits in state court "'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" Owens, 198 F.3d at 681 (quoting 28 U.S.C. §2254(d)(1)). Findings of fact made by a state court are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. §2254(e)(1). See also Gee v. Groose, 110 F.3d 1346, 1351 (8th Cir. 1997) (state court factual findings presumed to be correct where fairly supported by the record).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-413 (2000). With regard to

the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413; see also Bucklew v. Luebbers, 436 F.3d 1010, 1016 (8th Cir. 2006); Rousan v. Roper, 436 F.3d 51, 956 (8th Cir. 2006). In other words, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." Williams, 529 U.S. at 411.

**B.      Ground One**

In his first ground for relief, Thornton argues that he was denied effective assistance of counsel, because plea counsel did not explain that Thornton's cooperation with the State would not guarantee a plea deal of ten to fifteen years, and that the court would determine his sentence regardless of Thornton's cooperation with the State. This is the same claim Thornton raised in his post-conviction motion and in his appeal from the denial of post-conviction relief. Respondent contends that Thornton's claim fails on its merits.

In Hill v. Lockhart, 474 U.S. 52, 58 (1985), the Supreme Court held that the two-pronged Strickland test applies to challenges to guilty pleas on grounds of ineffective assistance of counsel and that, to prevail, a habeas petitioner must show that his attorney's performance "'fell below an objective standard of reasonableness,'" and that "'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" Hill, 474 U.S. at 59 (quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).

The motion court held that the record was clear that Thornton was fully advised of the range of punishment and that ultimately it was the court who would determine the appropriate

sentence within that range. (Respt's Ex. B at 77.) The court stated that "A mere hope by plea Counsel and Movant for leniency from the Court after the plea does not rise to a fraud or mistake resulting in prejudice." Id.

The Missouri Court of Appeals held as follows:

> Here, the record indicates that the plea court questioned [Thornton] with such specificity that his alleged mistaken belief about the sentence was not "reasonable." The court specifically asked [Thornton] whether he understood that there was no plea agreement, and he said he did. He also testified, in response to the court's questioning, that no promises or threats had been made to him or to his family in order to convince him to plead guilty. The court not only verified with [Thornton] that the court was the ultimate arbiter for his sentence, detailing the ranges of punishment for each crime but also told [Thornton] that the prosecution recommended twenty-five years. [Thornton] told the court that he understood and still desired to plead guilty. Based on the court's questions and verifications, as well as [Thornton]'s indication that he understood them, the motion court's finding that [Thornton]'s mistaken belief was not reasonable is not clearly erroneous.
>
> Burnett v. State, another case in which the movant claimed "he did not understand the consequences of a blind plea," further supports the motion court's finding. Burnett v. State, 311 S.W.3d 810, 817 (Mo. App. E.D. 2009). In Burnett, where the movant sought post-conviction relief, the court held that "[t]he plea court's questions were specific enough to elicit answers that directly refuted Movant's claims that his counsel assured him he would be sentenced under the dual-jurisdiction law…" Id. There, as in the instant case, the plea court asked the movant whether anyone had pressured him to plead guilty and whether anyone had promised him a certain sentence. Id. These specific questions, the court found, were enough to rebut the movant's claims for post-conviction relief. Id. Likewise, in this case, [Thornton] had an opportunity to express any promises or expectations he had with regard to sentencing but failed to do so; thus, Movant's claim that the plea was involuntary due to a mistaken belief must fail. See id.
>
> Moreover, "[w]here a movant assured the trial court at his guilty plea hearing that he is satisfied with his trial counsel's performance, the movant cannot later claim the contrary." Kelley v. State, 866 S.W.2d 879, 880 (Mo. App. E.D. 1993) (quotation omitted). In addition to its questions on possible promises or threats made to [Thornton], the court further asked [Thornton] whether he was given enough time with counsel, whether counsel had fully advised him of the consequences of his plea, and whether he was satisfied that counsel had adequately, completely, and effectively

represented him. [Thornton] affirmed that he had sufficient time with counsel, he fully understood the consequences of his plea, and that he was fully satisfied with counsel's representation. Because the plea hearing's record is clear [Thornton] cannot now claim dissatisfaction with his counsel's performance.

In conclusion, [Thornton] unequivocally stated that he freely and voluntarily pleaded guilty after being fully advised by Plea Counsel and the court of the consequences of his guilty plea. Because "Movant's claim of coercion is refuted by his statements at the plea hearing that he was not threatened, and that he was pleading guilty knowingly and of his own free will…[t]he motion [court] did not clearly err in denying Movant's request for post-conviction relief…" Grace v. State, 313 S.W.3d 230, 234 (Mo. App. E.D. 2010).

(Respt's Ex. E at 5-7.)

As noted by both the state motion court and appellate court, Thornton's current claim that plea counsel failed to explain that there was no plea deal is refuted by the record. That record includes Thornton's own assurances, made under oath, that he was pleading guilty without any plea agreement and with the knowledge that he might receive a 25-year sentence. Thornton testified that no one had promised him anything, and no one had threatened him to plead guilty. "Solemn declarations in open court carry a strong presumption of verity[,]" Blackledge v. Allison, 431 U.S. 63, 74 (1977); thus, it is a heavy burden to overcome admissions at a plea hearing to show that the plea was involuntary, Nguyen v. United States, 114 F.3d 699, 703 (8th Cir. 1997).

Although Thornton contends that he had an implicit agreement with the State for leniency, the record belies this claim. At the evidentiary hearing, Thornton testified that plea counsel advised him that he did not have a good chance of winning at trial, and that he would have a better chance if he cooperated with the State and pleaded guilty. (Respt's Ex. A at 7-8.) Plea counsel testified that he did not make any promises to Thornton of leniency by the State, but told him that, in his experience, the only way Thornton would get a reduction in his sentence was

if he cooperated fully with the State. Id. at 27-28, 32-33. Plea counsel indicated that Thornton gave a statement to the prosecutor regarding co-defendant Ms. Powell. Id. at 28. Counsel testified that, between the time Thornton gave the statement and the time of sentencing, Ms. Powell "picked up a new case" and pled guilty, rendering Thornton's statement unnecessary. Id. at 29.

The prosecutor testified that she never conveyed any promises to Thornton or any hopes of leniency. Id. at 46. Rather, she testified that she advised defense counsel that, if Thornton wanted to enter a blind plea, it would be up to the court to determine whether any cooperation would be taken into consideration. Id. The prosecutor testified that the information Thornton provided was not useful due to the inability to verify the information and the fact that Ms. Powell picked up a new charge. Id. at 46-47. Further, the prosecutor noted that the PSR revealed arrests for a robbery and a rape, of which she was not aware. Id. at 38.

In United States v. McKnight, 186 F.3d 867 (8th Cir. 1999), the Eighth Circuit Court of Appeals rejected a habeas claim that a defendant was misled at his change of plea hearing as to the length of the sentence. The court noted that some statements had been made indicating a "reasonable expectation" of a lesser sentence than imposed; however, the plea agreement and colloquy indicated that the defendant knew he faced a greater sentence. Id. at 869. The court concluded that the defendant's hope of a lesser sentence did "not translate into a claim for habeas relief." Id. Similarly, in United States v. Has No Horses, 261 F.3d 744, 749 (8th Cir. 2001), the court rejected a claim that erroneous advice by counsel about an expected sentence entitled the defendant to set aside his guilty plea, finding that the defendant had testified that he understood that the judge was not bound by a particular sentence and that he might receive a different sentence than expected. See also Premachandra v. United States, 101 F.3d 68, 69 (8th

Cir. 1996) (rejecting habeas claim that guilty plea was not voluntary because trial counsel had incorrectly informed petitioner that he would not serve a lengthy prison term if he pleaded guilty; at change of plea hearing, petitioner expressly acknowledged (i) potential sentence he faced, (ii) uncertainty as to that sentence until pre-sentence report had been received, and (iii) his commitment to the plea even if he received a longer sentence than expected).

Here, Thornton has not satisfied his heavy burden to show the incorrectness or unreasonableness of the Missouri Court of Appeals' determination that he had not established his plea counsel provided ineffective assistance in discussing the potential sentence with him. Despite Thornton's hopes for a lesser sentence, his guilty plea was not induced by any promises or misinformation about its length or character. Thus, Thornton's guilty plea was not involuntary, unknowing, or caused by the ineffective assistance of counsel.

Accordingly, the undersigned recommends that Thornton's first ground for relief be denied.

## C. Grounds Two, Three, and Four

As previously noted, Respondent contends that grounds two, three, and four are procedurally defaulted and fail on their merits.

### C.1. Procedural Default

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. Wemark v. Iowa, 322 F.3d 1018, 1020−21 (8th Cir. 2003) (internal quotation marks and citations omitted) (quoting Anderson v. Harless, 459 U.S. 4, 6 (1982) (per curiam) and Anderson v. Groose, 106 F.3d 242, 245 (8th Cir. 1997)). Specifically, a state prisoner must fairly present each of his

claims in each appropriate state court before seeking federal habeas review of the claim. Baldwin v. Reese, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. Wemark, 322 F.3d at 1021 (internal quotation marks omitted) (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir.1996)). Claims that are not fairly presented to the state courts are procedurally defaulted. See id. at 1022. Absent a showing of cause and prejudice or a miscarriage of justice, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure to follow applicable state rules in raising the claim in state court. Sawyer v. Whitley, 505 U.S. 333, 338–39 (1992).

Missouri requires the raising of constitutional claims at the first available opportunity. See State v. Wilson, 812 S.W.2d 213, 216 (Mo. Ct. App. 1991), citing State v. Smith, 781 S.W.2d 761, 770 (Mo. banc 1989). Missouri Supreme Court Rule 24.035 "provides the exclusive procedure by which [a] person [convicted of a felony or a guilty plea] may seek relief in the sentencing court for the claims enumerated." Mo. S. Ct. Rule 24.035(a). The types of claims identified in the Rule include: claims that the conviction or sentence imposed violates the constitution and laws of [Missouri] or the constitution of the United States, including claims of ineffective assistance of trial and appellate counsel, that the court imposing the sentence was without jurisdiction to do so, or that the sentence imposed was in excess of the maximum sentence authorized by law. Id. See also Roberts v. Milburn, 2013 WL 4620614 (E.D. Mo. Aug. 24, 2013). When claims for relief are not presented in a Rule 24.035 motion to a state court, the state court does not have an opportunity to review the claims, therefore a petitioner's

failure to present such claims "constitutes default to federal habeas review." Smith v. Groose, 998 F.2d 1439, 1441 (8th Cir. 1993).

Thornton did not raise ground four in any state court. Thornton raised grounds two and three in his pro se post-conviction motion, but he failed to raise them on appeal from the denial of post-conviction relief. Thus, grounds two, three, and four are procedurally defaulted.

The United States Supreme Court has held a state prisoner can overcome procedural default if he or she can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991). In Coleman, the Court explained "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 753 (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). Furthermore, to establish actual prejudice, a petitioner must demonstrate that the errors "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170 (1982) (emphasis in original). Lastly, in order to assert the fundamental miscarriage of justice exception, a petitioner must make a showing of actual innocence based on "new reliable evidence that he was innocent of the crime of which he was convicted." Storey v. Roper, 603 F.3d 507, 524 (8th Cir. 2010).

In Martinez v. Ryan, 132 S. Ct. 1309, 1319 (2012), the Supreme Court adopted a limited qualification to its holding in Coleman. The Court held that "a procedural default will not bar a federal habeas corpus court from hearing a substantial claim of ineffective assistance of counsel

at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Id. at 1320. This exception should not be confused with 28 U.S.C. § 2254(i), which provides "the ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief." Id. at 1320 (quoting 28 U.S.C § 2254(i)). The holding in Martinez allows a petitioner to claim ineffective assistance of post-conviction counsel to establish "cause" for a procedural default of a habeas corpus claim of ineffective assistance of trial counsel, however, it does not allow the petitioner to rely on the same as a ground for relief. Id. Additionally, this exception does not apply if the State demonstrates the ineffective assistance of trial counsel claim is unsubstantial or non-meritorious. Id. at 1319. Also, for claims raised in the motion court but abandoned on appeal, ineffective assistance of post-conviction appeal counsel is not cause that excuses procedural default. Arnold v. Dormire, 675 F.3d 1082, 1087 (8th Cir. 2012).

As cause for his procedural default, Thornton contends that his post-conviction counsel had a conflict of interest due to the lack of proper funding and resources provided to the Missouri State Public Defender System. The Eighth Circuit has held that attorney conduct may provide cause to excuse a state procedural default where, as a result of a conflict of interest, a post-conviction attorney "ceased to be [the petitioner's] agent." Jamison v. Lockhart, 975 F.2d 1377, 1380 (8th Cir. 1992). Thornton is unable to demonstrate the presence of an actual conflict of interest. Thornton claims that appointed counsel was unable to advance all of his claims due to the limited funding and resources available and the excessive caseload placed upon counsel. There is no evidence that any of these factors influenced post-conviction counsel or post-conviction appellate counsel in determining which claims to raise. Thus, Thornton has failed to demonstrate cause for his procedural default.

To the extent Thornton seeks to claim ineffective assistance of post-conviction counsel to establish cause for his procedural default of a habeas corpus claim of ineffective assistance of trial counsel, this also fails. Thornton raised his second and third grounds for relief in his post-conviction motion, but abandoned them on appeal. As noted above, ineffective assistance of post-conviction appeal counsel is not cause that excuses procedural default. Arnold, 675 F.3d at 1087. Consequently, Thornton cannot establish cause for the procedural default of his second and third grounds for relief.

With regard to his fourth ground for relief, Thornton must demonstrate under Martinez that he suffered prejudice from the ineffective assistance of post-conviction counsel by not raising a substantial claim of ineffective assistance of trial counsel.

In his fourth ground for relief, Thornton contends that trial counsel was ineffective for failing to argue that the Double Jeopardy Clause prohibited the trial court from sentencing Thornton on both the first-degree assault count and an armed criminal action count; and on both the attempted first-degree robbery count and the second armed criminal action count. The United States Supreme Court has held that the legislature may authorize cumulative punishment under two statutes even if both legal violations are based on the same conduct. Missouri v. Hunter, 459 U.S. 359, 368-69 (1983).

Here, Mo.Rev.Stat. § 571.017 (1986) states that "nothing…shall prevent imposition of sentences for both armed criminal action" and the underlying felony except as stated in Mo.Rev. Stat. § 571.015.4 (1986). That statute excluded the following offenses: possession of machine guns (Mo.Rev.Stat. § 564.590); concealed weapons and the dangerous use of weapons (Mo.Rev.Stat. § 564.610) and Mo.Rev.Stat. § 564.630); possession of defaced firearms (Mo.Rev.Stat. 564.620); and sale of defaced firearms and sale of concealable firearms to a

person without a permit (Mo.Rev.Stat. § 564.640). The offenses of first-degree assault and attempted first-degree robbery are not on that list. Thus, the legislature intended for cumulative punishments for first-degree robbery, first-degree assault, and armed criminal action, and Thornton's sentencing for these offenses did not violate the Double Jeopardy Clause. Accordingly, Thornton has not demonstrated his post-conviction counsel failed to raise a substantial claim of ineffective assistance of trial counsel.

In Schlup v. Delo, 513 U.S. 298, 324 (1995), the Supreme Court recognized that a habeas petitioner could present a claim of actual innocence as a "gateway" to resurrecting procedurally defaulted claims of constitutional error which occurred in the underlying trial, but "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Petitioners asserting innocence as a gateway to defaulted claims must establish that in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." Id. at 327.

Thornton does not allege actual innocence, either as a freestanding claim or as a gateway to excuse his procedural default. Thus, Thornton's grounds for relief cannot be resurrected from procedural default.

**C.2.  Merits**

The undersigned has already found that Thornton's second, third, and fourth grounds for relief are procedurally defaulted. These claims fail on their merits as well.

### C.2.a. Ground Two

In his second ground for relief, Thornton argues that the prosecutor committed misconduct when she led Thornton to believe he would receive some type of leniency if he provided information on his co-defendant.

As noted above, the record reveals that the prosecutor did not promise Thornton leniency. Rather, the prosecutor explicitly stated at the plea hearing that the State "has not granted any leniency" toward Thornton as a result of his potential cooperation in a co-defendant's prosecution. (Respt's Ex. B at 16.) The prosecutor further stated that, if Thornton cooperated, the court could "take that into consideration" if it chose to do so. Id. Thus, the record refutes Thornton's claim that the prosecutor promised him leniency.

Accordingly, the undersigned recommends that Thornton's second ground for relief be denied.

### C.2.b. Ground Three

In his third ground for relief, Thornton argues that he was denied effective assistance of counsel when trial counsel failed to argue that a police officer committed perjury during a suppression hearing.

Thornton is unable to demonstrate prejudice under Hill. "The prejudice inquiry in such cases focuses on whether counsel's constitutionally ineffective performance affected the outcome of the *plea process*." Wanatee v. Ault, 259 F.3d 700, 703 (8th Cir. 2001) (quoting Hill, 474 U.S. at 59) (emphasis in original). Thornton's argument that, if counsel had objected to the officer's testimony, the trial court "may have suppressed Sergeant Martin's testimony" is insufficient to establish prejudice.

Accordingly, the undersigned recommends that Thornton's third ground for relief be denied.

**C.2.c. Ground Four**

Thornton argues that he was denied effective assistance of counsel when plea counsel failed to object to the sentencing court sentencing Thornton on both first degree assault and armed criminal action; and attempted first degree robbery and armed criminal action.

The undersigned has already found that the Missouri legislature intended for cumulative punishments for first-degree robbery, first-degree assault, and armed criminal action, and that Thornton's sentencing to these offenses did not violate the Double Jeopardy Clause. Plea counsel was not ineffective for failing to make a meritless objection.

Accordingly, the undersigned recommends that Thornton's fourth ground for relief be denied.

**D.     Certificate of Appealability**

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. See 28 U.S.C. § 2253(c)(2); Hunter v. Bowersox, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997).

In this case, Thornton has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, the undersigned recommends that no Certificate of Appealability be issued.

## **RECOMMENDATION**

**IT IS HEREBY RECOMMENDED** that the Petition of Alexander Thornton for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied**.

**IT IS FURTHER RECOMMENDED** that no Certificate of Appealability be issued.

The parties are advised they have fourteen days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 (b) (1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356, 357 (8th Cir. 1990).

Dated:  February 11, 2015                              _/s/ Abbie Crites-Leoni_
                                                       ABBIE CRITES-LEONI
                                                       UNITED STATES MAGISTRATE JUDGE